

Stacey H. Myers
Attorney
Phone: 202-895-5382
smyers@hgnlaw.com

March 13, 2013

Mr. Douglas C. Palmer, Clerk of the Court
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE:   **Phoenix Beverages, Inc. v. ExxonMobil Corp., Case No. 1:2-cv-03771-RMM-JO**

Dear Mr. Palmer:

  This letter is sent on behalf of Plaintiffs Phoenix Beverages, Inc., RODB LLC, Windmill Distributing Company, L.P., Up from the Ashes, Inc., and other affiliated companies (collectively "Plaintiffs"), in response to Defendants' February 13, 2013 letter ("Feb. 13 Letter") requesting that this case (the "Phoenix Matter") be deemed "related" to *DMJ Assocs. LLC v. Capasso*, 1:97-cv-07285-DLI-RML (E.D.N.Y) (the "DMJ Matter") under Local Rule 50.3.1. Local Rule 50.3.1 deems as "related" cases where "because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a *substantial saving* of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (emphasis added). These matters do not possess a similarity of facts and legal issues, and their treatment as "related" would not result in a savings of judicial resources. Magistrate Judge Orenstein and Magistrate Judge Levy have conferred, and saw no reason to *sua sponte* rule that these matters were related. 1:12-cv-03771-RRM-JO Docket Number ("Dkt.") 30, Rulings ¶ 2.

  The DMJ Matter began in 1997, when DMJ Associates LLC ("DMJ") brought suit against Exxon, Quanta, and numerous other parties under CERCLA, RCRA and New York's common law of nuisance. The primary claims in the DMJ Matter settled in 2005, see *DMJ Assocs. LLC v. Capasso*, No. 97-cv-7285, 2008 WL 4515799 *2-4 (E.D.N.Y. Oct. 2, 2008). Those claims involved injury to different real estate than the Phoenix Matter. DMJ was the holder of a mortgage judgment over three parcels of real estate (collectively the "Capasso Property"), *DMJ Assocs. LLC v. Capasso*, 288 F. Supp. 2d 262, 264 n.1 (E.D.N.Y. 2003), which lie to the north and west of 37-80 Review Avenue (the "Quanta Site"). DMJ alleged that a plume of contamination had migrated from the Quanta Site to the north and west to contaminate the Capasso Property, and deprived DMJ of its value as the mortgage judgment holder over those parcels. *Id.* at 268. DMJ's claims were settled on June 27, 2005 through a Settlement Agreement that is described at length in *DMJ*, 2008 WL 4515799 at *2-4. Under the settlement, Quanta, Exxon and the other Settling Defendants "agreed to make payments and undertake remediation in exchange for release from all claims." *Id.* at *8.

  All parties agree that DMJ's claims were settled in 2005. Feb. 13 Letter at 2; Dkt. 29 at 11:21-22. The only thing that remains in the DMJ Matter is third-party contribution claims brought by Exxon and Quanta against 131 parties to defray their costs in addressing the contamination at the Quanta Site and Capasso Property. Dkt. 45-3. Exxon and Quanta's third-party claims arise only under CERCLA, as their state law contribution claims were dismissed. *DMJ*, 2008 WL 4515799 at *2.

In contrast, the Phoenix Matter asserts seven causes of action against Exxon and Quanta under RCRA, CERCLA, and New York state law concerning private nuisance, trespass, negligence, strict liability, and New York State Navigation Law § 181. Dkt. 1 ¶ 1. Exxon and Quanta are the only Defendants. Plaintiffs seek declaratory relief, cost recovery on a joint and several basis, injunctive relief, damages, and attorney's fees and costs for the contamination of the Phoenix Property, real estate that lies southeast of the Quanta Site at 37-88 Review Avenue, Long Island City. *Id.* The Phoenix Property is a different piece of land than the parcels at issue in the DMJ Matter, with its own unique issues. Among other things, the Phoenix Property is an active workplace, where the health of workers could be at risk from exposure to hazardous substances that have migrated to the Phoenix Property from the Quanta Site unless the necessary investigation and cleanup is completed. Thus, Plaintiffs seek abatement of the imminent and substantial endangerment to human health and the environment at the Phoenix Property and down-gradient areas, including Newtown Creek, the local waterway where Plaintiffs believe contamination from the Quanta Site is being discharged, as well as recovery of Plaintiffs' costs of response, and compensation for damage to Phoenix Property.

### A. The Factual and Legal Issues in the Two Cases are Not Similar

Quanta's counsel has acknowledged that the "Phoenix site is not directly at issue in the DMJ litigation," Dkt. 29 at 13:15-16; indeed, distinctions between the two cases are significant. Whether and to what extent Quanta and Exxon will be required to clean up the Phoenix Property, how extensive a cleanup will be required, and how much they must compensate Plaintiffs for the damage is central and unique to the Phoenix Matter, and not at issue in the DMJ Matter.

Discovery in the Phoenix Matter will be focused on the extent of the harm to the Phoenix Property, how to best protect human health and the environment at the Phoenix Property, the effects on the value of the Phoenix Property of the migration of the Quanta contamination, the effects on Plaintiffs' use and investment in the property, and the measure of damages to compensate Plaintiffs. The defenses asserted by Exxon and Quanta are likewise specific to the Phoenix Property. Exxon and Quanta deny that contamination from the Quanta Site has injured the Phoenix Property. Dkt. 42 and 44 ¶¶ 41, 52, 55. Their defenses allege, among other things, that Plaintiffs have not suffered any injury (Dkt. 42 at 25, Dkt. 44 at 20); that Plaintiffs' costs are not recoverable (*id.*); that Plaintiffs have failed to mitigate their damages (Dkt. 42 at 25, Dkt. 44 at 21); that Plaintiffs' claims are barred by equitable doctrines (Dkt. 42 at 27, Dkt. 44 at 20) and statute of limitations, (*id.*), and that the "contamination on the Phoenix property stems from the operations from 1932 to 1970" of a company called Triplex Oil, rather than from the activities of Exxon and Quanta, Dkt. 29 at 14:20-15:5. None of these issues is part of the DMJ Matter.

The Court should reject Defendants' suggestion that the cases are related based on an overlap of parties. The only overlapping parties are Quanta and Exxon, who are Defendants in the Phoenix Matter, but third-party Plaintiffs in DMJ. Exxon and Quanta admit that "[t]hird-party practice has not yet commenced in the Phoenix Action." Feb. 13 Letter at 2. Arguments that the cases may have some similar parties "to the extent it does" commence, *id.*, cannot justify deeming the cases related now. To the contrary, CERCLA does not require Defendants to add third-party claims to the Phoenix Matter, but rather allows for contribution "during *or following* any civil action" under CERCLA Section 107. 42 U.S.C. § 9613 (f)(1) (emphasis added). The subject matter of any such contribution claims would also be quite different—requiring Exxon and Quanta to prove the nexus of wastes from *other parties* (as distinct from Exxon and Quanta) to the Phoenix Property—which is not at issue in Plaintiffs' claims. Any third party practice would involve documents and witnesses familiar with the operations of the third parties to

establish the volume, toxicity, and mobility of wastes from those sources (and the equitable share such parties should bear). None of that is a part of Plaintiffs' claims against Defendants, and Defendants cannot avoid liability under CERCLA, RCRA or New York law merely by showing others may have also contributed to the damage. Plaintiffs' case should not be consolidated with (or set behind) such issues in the DMJ Matter.

### B. There Will Not Be a Substantial Savings of Judicial Resources

There will be no savings of judicial resources in combining the DMJ Matter and the Phoenix Matter. These cases are in completely different postures from a case management perspective. The Phoenix Matter is in active discovery. In contrast, in DMJ when the parties "began mediation discovery came to a stop." Dkt. 29 at 14:7-8. No depositions have been taken in the DMJ Matter and there "were issues with the written document discovery that were put on hold pending the outcome of the mediation and have been on hold now for several years." *Id*. at 14:10-14. Review of the docket in DMJ confirms that discovery has been stayed since at least January 2009 when the parties entered mediation. *See* DMJ Docket Entry 1302 at 2 (requesting deferral of revised case management order); Docket Entry dated 3/3/2011 (noting continuance of discovery stay); Docket Entry dated 12/14/2012 (indicating settlement discussions are ongoing).

Discovery in the Phoenix Matter is progressing to address the issues that are unique to this case. Pursuant to the Court's scheduling order, Dkt. 31, written responses to Interrogatories and Documents Requests have been completed, and the parties are completing their document productions. Defendants have provided no specifics to support their suggestion that there will be a need for testimony from "many of the same witnesses" or that "many witnesses are of advanced age." Feb. 13 Letter at 3. Nor have they established that expert discovery will involve any significant overlap (aside from a general observation that experts could "be opining, at least in part, on Quanta Contamination in each action"). *Id*. To the contrary, the effect of such contamination on the Phoenix Property, the risk it poses to public health and the environment, the manner (and speed) with which it must be cleaned up, the diminution in property value and other related damages that Plaintiffs have suffered all are unique to the Phoenix Matter. Exxon's counsel alluded to this difference in part by suggesting that delineation of the contamination on the Phoenix Property may need to involve "digging wells, analyzing the material, and attempting to determine the source of that material and, if at all possible, when the material was deposited on the Phoenix site," Dkt. 29 at 21:11-15, issues that will not be part of the discovery that may occur (but is currently stayed) in the DMJ Matter, which will be limited to the amount of costs Exxon and Quanta can recover from third parties, including application of equitable factors (volume, toxicity, role in causing harm and/or degree of cooperation to prevent harm) to determine how the costs should be divided amongst those ultimately found liable. These areas have no overlap. The differences in these matters were recognized by Magistrate Judge Orenstein, who concluded after hearing Defendants' arguments: "I'm not sure I see what the substantial savings of judicial resources will be by combining the cases," Dkt. 29 at 27:24-28:1. Following consultation with Magistrate Judge Levy, neither Judge saw "any basis to act *sua sponte* to deem the cases related," Dkt. 30, Rulings ¶ 2. The cases should not be deemed related.

Very truly yours,
**Hunsucker Goodstein PC**

/s/ Stacey H. Myers
Stacey H. Myers