# Arent Fox

**Arent Fox LLP** / Attorneys at Law
Los Angeles, CA / New York, NY / San Francisco, CA / Washington, DC
www.arentfox.com

December 4, 2013

**VIA ECF**
Honorable James Orenstein
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Allen G. Reiter
Partner
212.484.3915 DIRECT
212.484.3990 FAX
allen.reiter@arentfox.com

Re:   Phoenix Beverages, Inc. et al., v. Exxon Mobil Corporation
      et al. Case No.: 1:12-cv-03771-RRM-JO

Dear Judge Orenstein:

     I write on behalf of Defendant Quanta Resources Corporation ("Quanta") in the above-referenced matter. Pursuant to Your Honor's Individual Practice Rule III.A.2.b, and Your Honor's December 2, 2013 Order, Quanta responds to Plaintiffs' November 27, 2013 letter motion seeking the Court's assistance in scheduling the deposition of Quanta's corporate designee on January 14. In addition to the arguments set forth in Exxon Mobil Corporation's ("ExxonMobil") letter requesting a stay of depositions, which Quanta incorporates herein, Quanta additionally seeks the Court's intervention to bar inquiry into several proposed 30(b)(6) deposition topics that either (1) demand discovery into unpled liability theories against unnamed parties, (2) seek testimony on topics that are more properly the subject of expert testimony, or (3) demand a level of detail that requires an impossible degree of witness preparation.

### A.  Plaintiffs' Deposition Topics Seek Information Irrelevant to The Complaint

     Plaintiffs' proposed 30(b)(6) deposition topics for Quanta include several areas of inquiry that are not grounded in their Complaint. None of the topics listed below bear any connection to the Plaintiffs' allegations and none are likely to lead to the discovery of admissible evidence as framed by the Complaint. Plaintiffs, admittedly, seek to use discovery to investigate potential claims against non-party companies, not to obtain information relating to the allegations of the Complaint. Any inquiry into the following areas is entirely irrelevant to any of the claims asserted in the Complaint, which are limited to the alleged liability of Defendants under CERCLA, RCRA and several state law causes of action (Topics 1, 3, 5, 23 and 31):

- Quanta's purchase of the Quanta Site, including negotiations, terms of the purchase, source of funding for the transaction, and the form of the transaction.
- The amount of money used to capitalize Quanta for its purchase and operations of the Quanta Site, including the sources of the initial capitalization and amounts provided by each such source, and including amounts, dates, and sources of any additional capital or contributions used to fund the ongoing business operations of the Quanta Site.
- The identity of the shareholders, officers, directors and employees of Quanta from 1980 to the present, and the responsibility of each such person.
- The source of Quanta's funding for investigation and remediation of the Quanta Site.

# Arent Fox

December 4, 2013
Page 2

- The financial condition of Quanta, including Quanta's net worth and identity of assets available to satisfy any judgment against Quanta.

Plaintiffs do not make any allegations with respect to piercing the corporate veil or seeking to impose operator liability on any other entity. Indeed, although Plaintiffs could have named all of the 50 Third-Party Defendants as direct defendants herein, they chose to name only two. While the Federal Rules permit broad discovery, the case law plainly prohibits the use of discovery as a device to fish for the identities of unnamed plaintiffs, to "'roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" *Evans v. Calise*, No. 92 CIV 8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994) (quoting *In re Fontaine*, 402 F. Supp. 1219, 1221 (S.D.N.Y. 1975)); *see also TechnoMarine SA v. Jacob Time, Inc.*, No. 12 CIV. 790, 2013 WL 5231471, at *7 n.5 (S.D.N.Y. Jul. 16, 2013); *Propst v. Ass'n of Flight Attendants*, 546 F. Supp. 2d 14, 26 (E.D.N.Y. 2008) ("Discovery is authorized for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim.") (internal quotation marks and citation omitted), *aff'd*, 330 F. App'x 304 (2d Cir. 2009).

Moreover, where, as here, relevancy is not apparent, "[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Barbara v. MarineMax, Inc.*, No. 12-CV-368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013) (internal quotation marks and citations omitted). In such situations, courts routinely grant motions for a protective order denying inquiry into areas that are irrelevant to the issues of the lawsuit. *See, e.g., Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 519 (N.D. Okla. 2003) (granting protective order to the extent Rule 30(b)(6) notice seeks irrelevant information); *Steil v. Humana Kansas City, Inc.*, 197 F.R.D. 442, 444-445 (D. Kan. 2000) (granting protective order to the extent Rule 30(b)(6) notice seeks examination on issues that are not related to issues in lawsuit); *McCurdy v. Wedgewood Capital Mgmt. Co.*, No. CIV. A. 97-4304, 1998 WL 964185, at *9 (E.D. Pa. Nov. 16, 1998) (where discovery is propounded for purposes of fishing into a piercing the corporate veil argument accompanied by baseless allegations, the information sought is irrelevant and a protective order is warranted). Plaintiffs have not met their burden in this case.

### B. Several Topics Are More Properly The Subject of Expert Testimony

Quanta objects to the noticed topics to the extent that they are more properly the subjects of expert testimony. A requesting party's Rule 30(b)(6) deposition notice is improper if it contains topics that are more suitable for expert testimony. *Dealer Computer Servs., Inc. v. Curry*, No. 12 CIV. 3457, 2013 WL 499520, at *5 (S.D.N.Y. Feb. 7, 2013); *Bergstrom, Inc. v. Glacier Bay, Inc.*, No. 08 C 50078, 2010 WL 3516190, at *2 (N.D. Ill. Aug. 31, 2010); *Dagdagan v. City of Vallejo*, 263 F.R.D. 632, 640 (E.D. Cal. 2009). Specifically, Quanta takes issue with the following (Topics 9, 24, 25, 28, 29):

- Materials the Quanta Site received from Exxon, including the nature, volume, and chemical characteristics for all such materials, whether picked up by the Mahler Companies or Quanta directly, or sent by Exxon to the Quanta Site, including any materials that were first sent to another location prior to arriving at the Quanta Site.

AFDOCS/10574393.2

# Arent Fox

December 4, 2013
Page 3

- The anticipated timeline for investigation and remediation of the contamination at the Quanta Site.
- The anticipated cost of the investigation and remediation of the contamination at the Quanta Site.
- Any data or analysis by Quanta that supports the assertion that the hazardous substances detected at the Phoenix Property and Quanta Site constitute harm capable of apportionment.
- Any physical samples Quanta has collected from the Phoenix Property and any analysis of such samples, including chemical speciation analysis to differentiate samples collected from the Phoenix Property from samples collected from the Quanta Site.

### C. Level Of Detail Demanded Renders It Impossible to Prepare a 30(b)(6) Deponent

Finally, Quanta objects to any noticed topics that demand a level of detail that requires an impossible degree of witness preparation. It is unreasonable to expect a corporate designee to testify about every individual communication, contract, or sampling that exists over the lengthy period of time at issue in this case. *U.S. ex rel Fago v. M & T Mortg. Corp.*, 235 F.R.D. 11, 25 (D.D.C. 2006) (without photographic memory, representative could not reasonably be expected to testify as to 63 loans). Quanta objects to the following topics on these grounds (Topics 4, 9, 10):

- The relationship between Quanta and Russell Mahler, including the terms of any contract between Quanta and Russell Mahler, payments made by Quanta to Russell Mahler, and whether Russell Mahler served as an officer, director, shareholder, or manager of Quanta.
- Materials the Quanta Site received from Exxon, including the nature, volume, and chemical characteristics for all such materials, whether picked up by the Mahler Companies or Quanta directly, or sent by Exxon to the Quanta Site, including any materials that were first sent to another location prior to arriving at the Quanta Site.
- Any and all contracts between Exxon and Quanta between 1980 and 2005.

In the event the Court denies Quanta and ExxonMobil's joint request to stay depositions, the Court should limit the subject matter and scope of Quanta's 30(b)(6) deposition to those areas that are "reasonably calculated to lead to the discovery of admissible evidence," avoid topics that are best suited for expert testimony and avoid those that require onerous and burdensome witness preparation.

Respectfully submitted,

/s/ Allen G. Reiter

Allen G. Reiter

AFDOCS/10574393.2